### WARD v. PAUL J. RAINEY PIER CO.

(Supreme Court, Appellate Division, First Department.   March 22, 1912.)

PRINCIPAL AND AGENT (§ 89*)—ACTIONS FOR COMPENSATION—SUFFICIENCY OF EVIDENCE.

> In an action by an agent for commissions on the sale of bonds, where the defense was that the sale was rescinded by the buyer on account of the agent's false representations, evidence held insufficient to justify a verdict for plaintiff.
>
> [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 229–239; Dec. Dig. § 89.*]

Appeal from Trial Term, New York County.

Action by Marshall E. Ward against the Paul J. Rainey Pier Company to recover a balance on account of commissions. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Samuel S. Whitehouse, for appellant.
Harford T. Marshall, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J. The complaint alleged that on or about the 15th day of September, 1909, plaintiff and defendant entered into an agreement whereby defendant agreed to employ the plaintiff as agent to sell its first mortgage 6 per cent. gold bonds and pay plaintiff a commission of 10 per cent. of the purchase price of all bonds sold by him as payment for his services in negotiating said sales. The answer admitted the employment, but alleged that it "agreed to pay him for his services 10 per cent. of the moneys which the defendant should receive on account of the purchase price of all such bonds actually sold by him," and further alleges that the alleged sale of $30,000 of such bonds to Mary Reilly was not an actual, bona fide, and binding sale of such bonds to her, that said alleged sale of such bonds to her was never completed, in whole or in part, and was not and is not enforceable against her.

Plaintiff, who had formerly been in the employ of the Title Guarantee & Trust Company, but had left its employ a year prior to the transactions here under consideration, testified:

"I was to receive 10 per cent. as my commission for the sale, and my commission was to be paid to me at the time of the money being turned over to the Paul J. Rainey Pier Company, or to him."

—referring to Mr. De Saulles, the vice president and subsequent president of the company. Plaintiff claims to have sold $40,000 worth of these bonds, and admits that he has received $2,000 by way of commission, and sues for the balance, namely, $2,000.

The transaction under consideration was the alleged sale of $30,000 of bonds to Miss Mary Reilly. Miss Reilly sent $30,000 in checks to the order of the Title Guarantee & Trust Company. She subsequently brought suit for the recovery of this amount, and the defendant company, in settlement of her claim against it, paid her $2,000 in cash and $685 by way of interest, and gave her a note for $28,000, with a large amount of stock collateral.

The defense to the suit at bar was that plaintiff deceived Miss Reilly and misrepresented the facts to her; that while she thought she was buying a bond guaranteed by the Title Guarantee & Trust Company, said company was only the trustee of the mortgage securing said bonds; and that when she discovered the facts she brought the suit, which resulted in the settlement above set forth.

Miss Reilly testified that she was dealing with the plaintiff as the representative of the Title Guarantee & Trust Company; that she had had guaranteed mortgages of that company before; that she was a dressmaker; that she had saved this amount of money, and desired to invest it in the same kind of guaranteed mortgages; that she asked for 5 per cent. mortgages, and that the plaintiff told her that the company did not have any that paid that amount, but that he had those bonds of the Paul J. Rainey Pier Company, which were 6 per cent. bonds, and which were just as safe as the mortgages she desired; that they were guaranteed by the Title Guarantee & Trust Company, and that if anything was safe that company was; that he told her that his mother had invested in $25,000 of them; that all of these bonds had been sold, and that the First or Second National Bank of Brooklyn had subscribed for $125,000 of them. As matter

of fact, none of the bonds had been sold or subscribed for. This was the first transaction in them, and they were not delivered until some time after the money had been paid, because they were not ready for delivery. Neither Ward's mother nor the Brooklyn bank referred to had invested in any of these bonds.

It further appeared that under the subscription agreement a stock bonus to the extent of 50 per cent. of the bonds subscribed for were to be delivered with them. Miss Reilly was told nothing of this stock bonus, but De Saulles and the plaintiff agreed to divide the stock, which was to be delivered as a bonus upon these bonds, between themselves.

Upon the facts proved, no cause of action was established against the defendant, and the verdict was against the evidence.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs and disbursements to the appellant to abide the event. All concur.